**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERTO TRINIDAD** | § | |
| **DEL CARPIO FRESCAS,** | § | |
| Reg. No. 48186-380, | § | |
| Movant, | § | |
| | § | **EP-21-CV-223-DCG** |
| v. | § | **EP-14-CR-1237-DCG-1** |
| | § | |
| **UNITED STATES OF AMERICA,** | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Roberto Trinidad del Carpio Frescas (del Carpio) asks the Court to vacate his convictions and sentences through a pro se motion under 28 U.S.C. § 2255.[1] Mot. to Vacate, ECF No. 314. His motion is denied for the following reasons.

### BACKGROUND AND PROCEDURAL HISTORY

Del Carpio is a 45-year-old inmate serving a 216-month sentence for multiple counts of wire fraud and money laundering. Am. J. Crim. Case 3, ECF No. 310. He is currently incarcerated at the Federal Correctional Institution in Herlong, California. See Federal Bureau of Prisons, Find an Inmate, https://www.bop.gov/inmateloc/ (search for Reg. No. 48186-380) (last visited Sept. 27, 2021). His anticipated release date is June 14, 2030. Id.

Between 2010 and 2011, del Carpio ran a "Ponzi scheme" from El Paso, Texas. United States v. del Carpio Frescas, 932 F.3d 324, 327 (5th Cir.), cert. denied, 140 S. Ct. 620 (2019). He held himself out as a stockbroker and solicited investments by wire from victims located

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in EP-14-CR-1237-DCG-1. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

mostly in Chihuahua, Mexico. Id. He took their money with promises of big returns on their

investments. Id. He "transferred those ill-gotten gains to himself and his family for personal

use." Id. He was evasive when his victims asked for updates. Id. He eventually stopped

responding to their queries entirely. Id. "He cheated Mexican 'investors' out of at least $5

million." Id. So, he was charged with 25 counts of wire fraud, in violation of 18 U.S.C. § 1343,

and ten counts of money laundering, in violation of 18 U.S.C. § 1957. Id. After an eleven-day

trial, he was found guilty by a jury on 34 of the 35 counts. Id.

His Co-defendant—Brian Binder—pleaded guilty pursuant to a plea agreement to one

count of wire fraud, in violation of 18 U.S.C. § 1343. Plea Agreement, ECF No. 189. Binder

was sentenced to 30 months' confinement. Am. J. Crim. Case 2, ECF No. 264.

A probation officer prepared a presentence investigation (PSR) after del Carpio's

convictions. PSR, ECF No. 160. She grouped all 34 counts together under Chapter 3, Part D, of

the Sentencing Guidelines and identified money laundering as the relevant offense guideline for

the group. Id. at ¶ 47; Del Carpio Frescas, 932 F.3d at 327.

> Based on the wire fraud provisions, the PSR assigned a base offense level of 7.
> Then the PSR identified the relevant specific offense characteristics under Chapter
> Two and two adjustments under Chapter Three of the [Sentencing] Guidelines:
>
> • 18 points under § 2B1.1(b)(1)(J) because del Carpio caused more than
> $3.5 million in economic loss;
>
> • 6 points under § 2B1.1(b)(2)(C) because del Carpio caused hardship to
> more than 25 people;
>
> • 2 points under § 2B1.1(b)(10)(B) because del Carpio committed much of
> his scheme from outside the United States;
>
> • 1 point under § 2S1.1(b)(2)(A) because del Carpio was convicted of
> money laundering under 18 U.S.C. § 1957;
>
> • 2 points under § 3B1.3 because del Carpio abused his victims' trust; and

> • 4 points under § 3B1.1(a) because del Carpio organized or led a scheme "that involved five or more participants or was otherwise extensive."

> Adding those together, the PSR calculated an offense level of 40. Del Carpio fell in criminal history category I. So, the Guidelines yielded a range of 292 to 365 months in prison.

Del Carpio Frescas, 932 F.3d at 327–28.

Del Carpio's counsel objected to (1) the six-level upward adjustment under Sentencing Guideline § 2B1.1(b)(2)(C) for causing substantial financial hardship to more than 25 victims, (2) the two-level upward adjustment under Sentencing Guideline § 2B1.1(b)(10)(B) for committing a substantial part of the scheme outside the United States, (3) the two-level upward adjustment under Sentencing Guideline § 3B1.3 for abusing the victims' trust, and (4) the four-level upward adjustment under Sentencing Guideline § 3B1.1(a) for the aggravating role as a leader of the criminal activity. Addendum 2–4, ECF No. 159.

After hearing the evidence and arguments of counsel, the Court modified one specific offense characteristic. Del Carpio Frescas, 932 F.3d at 328. It concluded del Carpio had caused hardship to at least five people—but not necessarily 25 people. Id. It accordingly applied four points under Sentencing Guideline § 2B1.1(b)(2)(B)—rather than six points under § 2B1.1(b)(2)(C). Id. It also granted a two-level reduction because del Carpio had assisted investigators. Id. Combining this new offense level of 36 with a criminal history category of I, the Court determined del Carpio's guidelines range was 188 to 235 months' imprisonment. Id. It sentenced del Carpio to concurrent 235-month sentences for the 24 wire fraud convictions. J. Crim. Case 3, ECF No. 203. It sentenced del Carpio to concurrent 120-month sentences for the ten money laundering convictions. Id. It also ordered del Carpio to pay $5,402,661 in restitution. Order, ECF No. 235.

3

On appeal, del Carpio challenged "the evidentiary sufficiency of his convictions on a handful of wire fraud and money laundering counts." Del Carpio Frescas, 932 F.3d at 328.   He challenged the Court's restitution order directing him to pay $5,402,661 under the Mandatory Victim Restitution Act.  Id. at 331.  He also brought two challenges to the Court's sentence. First, he observed the Court failed to calculate the offense levels for wire fraud and money laundering separately.  Second, he claimed the Court erred in the way it applied the abuse-of-trust and leadership enhancements.  Id. at 331–32.

The Fifth Circuit Court of Appeals affirmed the convictions because "sufficient evidence" supported them.  Del Carpio Frescas, 932 F.3d at 333.  It also affirmed the restitution order.  Id.  It remanded the case for resentencing, however, due to a single-point error in the total offense level.  Id. at 332–33.  It explained the money laundering offense did not involve del Carpio holding himself out as a sophisticated investor, broker, and trader.  Id.  Hence, it found the Court plainly erred in assessing an abuse-of-trust enhancement to the calculation of the money-laundering guideline used to determine del Carpio's sentencing range.  Id.

On remand, the probation officer revised del Carpio's PSR.  Revised PSR, ECF No. 296-1.  She used wire fraud for the highest offense level because it had a statutory maximum term of 20 years' imprisonment and assigned a base offense level of seven in accordance with Sentencing Guideline § 2B1.1(a)(1).  Id. at ¶¶ 47, 48.  She increased this by 18 levels under § 2B1.2(b)(1)(J) because del Carpio caused more than $3.5 million in economic loss.  Id. at ¶ 49. She added four levels under § 2B1.2(b)(2)(B) because the offense resulted in substantial financial hardship to more than five but less than 25 victims.  Id. at ¶ 50.  She included two levels under § 2B1.2(b)(10)(B) because a substantial part of the scheme was committed from outside the United States.  Id. at ¶ 51.  She added four levels under § 3B1.1(a) because del

4

Carpio was an organizer or leader of a criminal activity that involved five or more participants. Id. at ¶ 53. She included two levels under § 3B1.3 because del Carpio abused a position of public or private trust, or used a special skill, to facilitate the commission or concealment of the wire fraud offenses. Notably, she did not add one level under § 2S1.1(b)(2)(A) because del Carpio was convicted of money laundering under 18 U.S.C. § 1957. She recognized that "[a]s to Counts 1 to 24: The maximum term of imprisonment is 20 years. 18 U.S.C. § 1343. As to Counts 26 to 35: The maximum term of imprisonment is 10 years. 18 U.S.C. § 1957." Id. at ¶ 93. She concluded, "[b]ased upon a total offense level of 37 and a criminal history category of I, the guideline imprisonment range is 210 months to 262." Id. at ¶ 94.

The probation officer then submitted a fourth addendum to the presentence report to the Court. Fourth Addendum, ECF No. 296. She explained "after the two points are subtracted under [Sentencing Guideline] §5K1.1 (which is not reflected in the presentence report), the total offense level is 35, which with a criminal history category of I, yields a guideline imprisonment range of 168 months to 210." Id.

Del Carpio's counsel responded to the revised PSR with a request for a sentence below the advisory guidelines range. Sentencing Mem., ECF No. 299. He cited United States Sentencing Commission data for Fiscal Year 2018 which included 69,425 cases. Id. at 3–4 (citing U.S. Sentencing Comm'n, Quick Facts: Securities and Investment Fraud Offenses (available at https://www.ussc.gov/sites/default/files/ pdf/research-and-publications/quick-facts/Securities_Fraud_FY18.pdf). He observed that most securities and investment fraud offenders were sentenced below the guidelines range.

> In its summary, this Court would find that the median loss for FY 2018 was $2,580,271. The average sentence for securities and investment fraud offenders was 54 months. 50.4% of offenders were sentenced within the guideline range. 37.6% received a variance; of those offenders 96.3% received a downward variance

with an average sentence reduction of 42.4%. With regard to sentencing trends, the average sentence imposed decreased from 63 months in fiscal year 2014 to 54 months in fiscal year 2018.

If this Court were to access the Sentencing Commission datafile for the present loss amount, then it would find that when the loss amount is between $2.5M and $7M, the sentence was imposed within the range 32.9% of the time and below the range 65.9% of the time.

Id. at 4. He argued that del Carpio's previous sentence and his currently recommended sentence

"far exceed[ed] the most recent data on fraud sentencing." Id. He suggested a term of 144

months' imprisonment was reasonable. Id. at 12.

The Court accepted the revised guideline imprisonment range of 168 to 210 months—

which accounted for the two-level downward adjustment under Sentencing Guideline §5K1.1.

Resentencing Tr. 6–7, ECF No. 307. But it departed above the suggested range. It sentenced

del Carpio to concurrent 216-month sentences for each of the 24 wire fraud counts. Am. J.

Crim. Case 3, ECF No. 310. It also sentenced del Carpio to concurrent 120-month sentences for

each of the ten money laundering counts. Id. It explained:

THE COURT: . . . The guidelines have a number and so it's easy for the guidelines to kind of sway an impact on those determinations. And so as a judge, you have to be careful not to allow the guidelines to rule your decision, even though that's -- the law requires me to start there and to consider the guideline range and then move on from there.

So when I first assessed this sentence of 235 months, I considered the guidelines and then I considered those other 3553(a) factors. And the guidelines had a number and the other 3553(a) factors generated within my mind a sense of what the sentence should be, and at that time it was 235 months.

And now the guidelines have changed, but the law clearly tells us that the guidelines do not drive the sentence alone. They provide a suggestion. And now the new suggestion is 168 to 210 months, but the other 3553(a) factors have not changed in any way. They are exactly the same. And so a sentence of 235 months would seem appropriate.

. . . .

6

The one thing that has changed is Mr. Del Carpio's attitude. And so factoring in that new change, I'm willing to consider a sentence less than I thought was appropriate before because of that, because Mr. Del Carpio's attitude was a principal driver in how I felt that a sentence should be assessed. And so I'm going to assess his sentence at 216 months on Counts 1 through 24. And that is above the suggested guideline range, but it is below that which the other 3553(a) factors suggested to me before and is now the point at which I think the other 3553(a) factors suggest the sentence should be. And so that will be the Court's sentence on Counts 1 through 24, 120 months on Counts 26 through 35. And I think there's a count that -- what is it -- 25 that's missing. So 26 through 35, 120 months. These all will run concurrently.

. . . .

Now, if somehow I have once again miscalculated the guideline range and on appeal it's determined that the guidelines should be different, I would only suggest that the guidelines are a wonderful tool. They are suggestions. And whether I get them wrong or right, they are still suggestions. There are other 3553(a) factors that are also impactable, even they don't come with a range of months attached to them. Those are calculations that judges make in their head. And based upon those calculations, the other 3553(a) factors, whether I get the guidelines right or wrong, a sentence in my mind of 216 months is what is appropriate. And that wouldn't change even if my calculation were incorrect.

Mr. Gorman, anything else you require of the Court?

MR. GORMAN: No, Your Honor, but I do think on remand, I don't think this will be going back up on a guideline issue, I think it's consistent with the opinion, but I would, for purposes of the reasonableness of the sentence, Your Honor, object to the sentence as unreasonable, given the reasons set forth in the sentencing memo filed in this case, Your Honor.

THE COURT: Yes, sir. Thank you.

Resentencing Tr. 25–29, ECF No. 307.

In a second direct appeal, del Carpio asserted the sentences for wire fraud were

"substantially unreasonable." United States v. Del Carpio Frescas, 838 F. App'x 94, 94 (5th Cir.

2021).

The Fifth Circuit rejected del Carpio's argument and affirmed his sentences because del

Carpio failed to show that the Court made "a clear error in balancing the 18 U.S.C. § 3553(a)

factors." Id. at 94–95 (citing United States v. Nguyen, 854 F.3d 276, 283 (5th Cir. 2017)).

"Indeed, the district court saw and heard the evidence and balanced each of the § 3553(a) factors

to determine Del Carpio Frescas's sentences." Id. at 95.  Moreover, the Fifth Circuit recognized

it "'must give due deference to the district court's decision that the § 3553(a) factors, on a whole,

justify the extent of the variance.'" Id. (quoting Nguyen, 854 F.3d at 283).

Del Carpio now raises four ineffective-assistance-of-counsel claims in his § 2255 motion.

Mot. to Vacate, ECF No. 314.  His claims all arise from purported errors at his sentencing.  First,

he asserts his counsel failed to raise "the issue of the disparity of sentence between him and Co-

defendant Brian Binder." Id. at 4.  Second, he avers his counsel erred when he failed to bring to

the attention of the Court the Government's agreement to file a downward departure under

Sentencing Guideline § 5K1.1 for his substantial assistance to authorities.  Id.  Third, he

maintains his counsel failed to invoke United States v. Alleyne, 570 U.S. 99 (2013) and argue

that any penalty beyond the mandatory minimum sentence must be submitted to the jury and

proved beyond a reasonable doubt. Id. at 7.  Finally, he contends his counsel erred when he did

not challenge the sentencing enhancements. Id. at 8.

## APPLICABLE LAW

Title 28 U.S.C. § 2255 "'provides the primary means of collateral attack on a federal

sentence.'" Pack v. Yusuff, 218 F.3d 448, 451 (5th Cir. 2000) (quoting Cox v. Warden, 911 F.2d

1111, 1113 (5th Cir. 1990)).  But "it does not encompass all claimed errors in conviction and

sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979).  It identifies only four

grounds on which a movant may obtain relief: (1) the "sentence was imposed in violation of the

Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to

impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4)

8

the sentence is otherwise subject to collateral attack." United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). Hence, it does not permit a claim of error that is neither constitutional nor jurisdictional unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962). It also requires a movant to bear the burden of establishing a claim of error by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980) (citing United States v. Kastenbaum, 613 F.2d 86, 89 (5th Cir. 1980)).

When a § 2255 motion is filed, the reviewing court must conduct a preliminary review. Rules Governing Section 2255 Proceedings, Rule 4(b). It must dismiss the motion "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Id. If it finds the motion raises a non-frivolous claim to relief, it may order the Government to file a response or it may take other appropriate action. Id. If it concludes that the motion is meritorious, it shall "vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

## ANALYSIS

Del Carpio raises four ineffective-assistance-of-counsel claims in his § 2255. Mot. to Vacate, ECF No. 314.

A movant's ineffective-assistance-of-counsel claim presented in a § 2255 motion is analyzed under the two-pronged test in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail, a movant must show (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94.

9

To establish deficient performance, a movant must demonstrate that his counsel's assistance fell "'below an objective standard of reasonableness.'" United States v. Conley, 349 F.3d 837, 841 (5th Cir. 2003) (quoting Strickland, 466 U.S. at 688). This means a movant must prove that (1) counsel's performance was outside the broad range of what is considered reasonable assistance and (2) this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474–75 (5th Cir. 2001). In assessing if a particular attorney's performance was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

"[T]o establish prejudice, a '[movant] must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Wiggins v. Smith, 539 U.S. 510, 534 (2003) (quoting Strickland, 466 U.S. at 694). "[I]neffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Lafler v. Cooper, 566 U.S. 156, 165 (2012) (quoting Glover v. United States, 531 U.S. 198, 203 (2001)).

If a movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d

452, 463 (5th Cir.1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

### A. Sentencing Disparity

Del Carpio first asserts his counsel provided ineffective assistance when he failed to raise "the issue of the disparity of sentence between him and Co-defendant Brian Binder." Mot. to Vacate 4, ECF No. 314. He then adds a "disparity exists between his sentence and the sentences of similarly situated defendants nationwide." Mem. in Supp. 8, ECF No. 314-1.

The Court notes it sentenced del Carpio to concurrent 216-month terms of imprisonment on each of 24 counts of wire fraud. Am. J. Crim. Case 3, ECF No. 310. It observes it sentenced del Carpio's Co-defendant Binder to a 30-month sentence on one count of wire fraud. Am. J. Crim. Case 2, ECF No. 264. Thus, there is an apparent disparity in sentencing.

A district court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." See Gall v. United States, 552 U.S. 38, 54 (2007) (quoting 18 U.S.C. § 3553(a)(6)). But it must focus on "similarly situated defendants nationwide" and "does not require the district court to avoid sentencing disparities between co-defendants who might not be similarly situated." United States v. Guillermo Balleza, 613 F.3d 432, 435 (5th Cir. 2010) (per curiam).

The Court correctly calculated del Carpio's applicable guidelines range. Del Carpio Frescas, 838 F. App'x 94. It did not find that Co-defendant Binder was similarly situated. It allowed del Carpio the opportunity to present arguments as to what he believed was an appropriate sentence. Sentencing Mem., ECF No. 299. It considered the § 3553(a) factors and thoroughly articulated its reasons for sentencing del Carpio above the guidelines range. Resentencing Tr. 25–29, ECF No. 307. Since the Court correctly calculated and carefully

11

reviewed the guidelines range and the § 3553(a) factors, it "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." Gall, 552 U.S. at 54. Because del Carpio points primarily to the sentence of his Co-defendant as evidence of an unwarranted sentencing disparity, he fails to establish that the Court committed a § 3553(a)(6) procedural error.

Furthermore, del Carpio's counsel submitted a lengthy sentencing memorandum—with a request for a sentence below the advisory guidelines range—which compared sentences imposed by federal courts for securities and investment fraud during Fiscal Year 2018. Sentencing Mem., ECF No. 299. He observed that most federal offenders were sentenced below the guidelines range. Id. at 4. He argued that del Carpio's previous sentence—and his currently recommended sentence— "far exceed[ed] the most recent data on fraud sentencing." Id. He suggested a term of 144 months' imprisonment was reasonable. Id. at 12. He brought the memorandum to the Court's attention during del Carpio's resentencing hearing and discussed its contents with the Court. Resentencing Tr. 10–20, ECF No. 307.

The Court thanked del Caprio's counsel "for taking the time to put together an excellent sentencing memorandum and allocution." Id. at 20–21. But it rejected his argument. Id. at 25–29.

Del Caprio's counsel could have done nothing more at this point. Hence, del Caprio cannot overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689. He also cannot show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Wiggins, 539 U.S. at 534. Consequently, he cannot establish his

counsel's performance was deficient and the deficient performance prejudiced the defense. Strickland, 466 U.S. at 689–94. He is not entitled to relief on this claim.

### B. Substantial Assistance

Del Carpio avers his counsel erred when he failed to bring to the attention of the Court the Government's agreement to file a downward departure under Sentencing Guideline § 5K1.1 for his substantial assistance to authorities. Mot. to Vacate 4, ECF No. 314. He claims the agreement "explained that two points were to be subtracted under § 5K1.1." Mem. in Supp. 9, ECF No. 324-1. He asserts the Court "seemed to simply turn a blind eye to this fact." Id.

The record belies the claim. It shows del Carpio's counsel brought the fourth addendum to the presentence investigation to the Court's attention at his resentencing hearing. Resentencing Tr. 5–6, ECF No. 307. It further shows the Court granted del Carpio a two-level downward adjustment due to his assistance to investigators. Id. at 6–7; Del Carpio Frescas, 932 F.3d at 328.

As a result, del Carpio cannot meet his burden of showing his counsel's performance was either deficient or prejudiced his cause. He is not entitled to relief on this claim.

### C. United States v. Alleyne

Del Carpio maintains his counsel erred when he failed to invoke United States v. Alleyne, 570 U.S. 99 (2013) and argue that any penalty beyond a mandatory minimum sentence must be submitted to the jury and proved beyond a reasonable doubt. Mot. to Vacate 7, ECF No. 314. He seems to suggest only a jury could impose an above-the-guidelines sentence. His reliance on Alleyne is misplaced.

The Supreme Court held in Alleyne that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."

570 U.S. at 103. But "the <u>Alleyne</u> opinion did not imply that the traditional fact-finding on relevant conduct, to the extent it increases the discretionary sentencing range for a district judge under the Guidelines, must . . . be made by jurors." <u>United States v. Hinojosa</u>, 749 F.3d 407, 412 (5th Cir. 2014) (citing <u>United States v. Booker</u>, 543 U.S. 220, 257 (2005)). Indeed, "[a]fter rendering the verdict, the jury's role [is] completed, it [is] discharged, and the judge [begins] the process of determining where within that range to set [a defendant's] sentence." <u>Alleyne</u>, 570 U.S. at 127 (Roberts, C.J., dissenting); <u>see also</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 481 (2000) ("We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion-taking into consideration various factors relating both to offense and offender-in imposing a judgment <u>within the range</u> prescribed by statute.") (emphasis in original). And unlike the primary offense conduct, "findings of fact for sentencing purposes need meet only the lower standard of 'preponderance of evidence.'" <u>United States v. Hull</u>, 160 F.3d 265, 269 (5th Cir. 1998).

The jury's verdict in del Carpio's case fully authorized the Court to impose a sentence of up to 240 months' imprisonment on him—the maximum statutory sentence—for each violation of 18 U.S.C. § 1343. "Everyone agrees that in making that determination, the judge was free to consider any relevant facts about the offense and offender, including facts not found by the jury beyond a reasonable doubt." <u>Alleyne</u>, 570 U.S. at 127 (Roberts, C.J., dissenting). Nothing in the record supports a conclusion that del Carpio's sentence was the result of the Court's determination that a higher mandatory minimum applied. In other words, the calculations and findings by the Court under the Sentencing Guidelines did not trigger increased mandatory minimums, a jury fact-finding requirement, or a higher burden of proof. <u>Hinojosa</u>, 749 F.3d at 412–13.

14

So, del Carpio's counsel was not ineffective for failing to raise a meritless issue. <u>See</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) (holding that counsel cannot be deemed ineffective for failing to raise a meritless argument). And del Carpio cannot show his counsel's performance was deficient and the deficient performance prejudiced his defense. <u>Strickland</u>, 466 U.S. at 689–94. He is not entitled to relief on this claim.

### D. Sentencing Enhancements

Finally, del Carpio contends his counsel erred when he failed to challenge the sentencing enhancements. Mot. to Vacate 8, ECF No. 314. He suggests his counsel should have challenged the amount of the transaction losses, offense level increases, his role in the offense, the conclusion that five victims suffered substantial financial hardship, and the assertion that a substantial part of the scheme occurred outside the United States. <u>Id</u>.

Specifically, del Carpio asserts "the jury found him guilty only of engaging in a monetary transaction in criminally derived property of a value greater than $10,000, and not the $3.5 million as described in the PSR's recommendation." Mem. in Supp. 12, ECF No. 324-1. He adds "[b]ecause monetary losses attributable to [him] were part of his case and not only sentencing factors, . . . the penalty . . . beyond the mandatory minimum sentence must be submitted to the jury and proved beyond a reasonable doubt under <u>Alleyne</u>." <u>Id</u>. He argues his "attorney rendered ineffective assistance by not challenging [the] money loss[ ] discrepancy that could have . . . result[ed] in a far less sentence than received by [him]." <u>Id</u>. at 13.

Del Carpio observes the Court increased his offense level by four levels for the substantial financial hardship he caused five or more victims, two points because a substantial part of the scheme occurred outside the United States, four points for his leadership, and two

15

points for his abuse of trust. Id. He contends his counsel should have challenged these upward adjustments to his offense level "in a more substantial way." Id. at 13–14.

Del Carpio maintains "his co-defendant, not him, . . . was the 'mastermind' behind the scheme." Id. at 14. He argues that if his attorney had "presented a substantive argument," four levels could have been deducted. Id.

Del Carpio observes the "Court came short in identifying the five or more victims with documented losses," which resulted in substantial financial hardship to them. Id. at 15. He maintains "the lack of identification . . . makes the 4-level increase inapplicable to him." Id. And "[b]ecause his attorney failed to properly object to this fact, his attorney rendered ineffective assistance. Id.

Finally, del Carpio claims he was denied the opportunity to confront the analyst who determined that all transactions were made in foreign or interstate commerce. Id. at 18. Thus, he argues, his counsel provided ineffective assistance by "not properly challenging the confrontation aspect of each of the 25 [wire fraud] counts as charged in his indictment." Id.

Del Carpio questions the sufficiency of the evidence in several of these claims. His convictions were affirmed by the Fifth Circuit because it determined "sufficient evidence" supported them. Del Carpio Frescas, 932 F.3d at 333. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions." United States v. Kalish, 780 F.2d 506, 508 (5th Cir. 1986).

Additionally, the record does not support del Carpio's claims. It shows del Carpio's counsel responded to the revised PSR with a request for a sentence below the advisory guidelines range. Sentencing Mem., ECF No. 299. It establishes his counsel cited Sentencing Commission data for Fiscal Year 2018 and observed most securities and investment fraud offenders were

16

sentenced well below the guidelines range. Id. at 4. It shows his counsel argued that del Carpio's previous sentence—and the recommended sentence in the PSR—"far exceed[ed] the most recent data on fraud sentencing." Id. It confirms his counsel argued a term of 144 months' imprisonment was reasonable in this case. Id. at 12.

The record also shows del Carpio's counsel objected to (1) the six-level upward adjustment under Sentencing Guideline § 2B1.1(b)(2)(C) for causing substantial financial hardship to more than 25 victims, (2) the two-level upward adjustment under Sentencing Guideline § 2B1.1(b)(10)(B) for committing a substantial part of the scheme outside the United States, (3) the two-level upward adjustment under Sentencing Guideline § 3B1.3 for abusing the victims' trust, and (4) the four-level upward adjustment under Sentencing Guideline § 3B1.1(a) for his aggravating role as a leader of the criminal activity. Addendum 2–4, ECF No. 159.

The record further shows del Carpio's counsel reminded the Court that he was entitled to a two-level downward adjustment because he assisted investigators. Resentencing Tr. 5–6, ECF No. 307.

The record establishes that del Carpio's counsel actively and aggressively advocated for him with a view toward obtaining the lowest possible sentence. It further establishes that the Court carefully considered counsel's arguments—and rejected most of them. It also shows his counsel could have done nothing more.

Del Carpio cannot show under the circumstances in this case "'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). On the contrary, he can only show that his counsel was a strong—though sometimes unsuccessful--advocate for his cause. He is not entitled to relief on these claims.

17

## EVIDENTIARY HEARING

A motion brought under § 2255 may be denied without a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); <u>see also United States v. Bartholomew</u>, 974 F.2d 39, 41 (5th Cir. 1992). The record in this case is adequate to dispose fully and fairly of del Carpio's claims. The Court need inquire no further on collateral review and an evidentiary hearing is not necessary.

## CERTIFICATE OF APPEALABILITY

A movant may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." <u>Id</u>. § 2253(c)(2). In cases where a district court rejects a movant's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>see also United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (applying <u>Slack</u> to a certificate of appealability determination in the context of § 2255 proceedings). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the movant must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Slack</u>, 529 U.S. at 484.

Reasonable jurists could not debate the Court's reasoning for denying del Carpio's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed.

<u>Miller El v. Cockrell</u>, 537 U.S. 322, 327 (2003) (citing <u>Slack</u>, 529 U.S. at 484).  The Court will not issue a certificate of appealability.

CONCLUSION AND ORDERS

The Court concludes it plainly appears from del Carpio's motion and the record of prior proceedings that he cannot meet his burden of establishing (1) his "sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) his sentence was in excess of the maximum authorized by law, or (4) his sentence is otherwise subject to collateral attack." <u>Seyfert</u>, 67 F.3d at 546.  It accordingly concludes that del Carpio is not entitled § 2255 relief.  The Court further concludes that del Carpio is not entitled to a certificate of appealability.  The Court therefore enters the following orders:

**IT IS ORDERED** that del Carpio's "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (ECF No. 314) is **DENIED**, and his civil cause is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that del Carpio is **DENIED a CERTIFICATE OF APPEALABILITY.**

**IT IS FURTHER ORDERED** that all pending motions in this cause, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

**IT IS SO ORDERED.**

SIGNED this ___28___ day of September 2021.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE